**John E. MORIARITY, Jr., Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 27S00–9207–CR–536.**

Supreme Court of Indiana.

Sept. 22, 1993.

---

Brent Westerfeld, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder for which he received an enhanced sentence of sixty (60) years.

---

The facts are: Preston Moriarity, the decedent in this case, was born December 6, 1990. Christina Kindle was the child's mother. The infant was premature and health complications required his stay in Riley Hospital in Indianapolis until February 12, 1991. At that time Christina lived in her father's house. In late April or early May of 1991, Christina and Preston moved into a mobile home with appellant. On July 11, 1991, appellant did not arrive home until about 8:00 p.m. When he arrived, Christina advised him that she was going to a ballgame with some friends and that she wanted him to baby-sit Preston, which he agreed to do. The women left the mobile home at approximately 8:30, leaving the child in appellant's care.

At 9:34 p.m., the Sheriff's Department received a 911 call advising that a baby had stopped breathing and that appellant was administering CPR. In a few minutes, an officer arrived and continued CPR on the baby. An ambulance crew then arrived, and attendants took over. However, shortly after they reached the hospital the baby was deceased. When the policeman first arrived at the mobile home, appellant advised him that the baby was on the floor with its bottle and that he had gone into the bedroom to make a telephone call. When he returned, the baby was not breathing.

A short time later, appellant stated that the baby was on the couch taking its bottle, that he had gone into the bedroom to make a telephone call, that he heard the baby fall from the couch, that he went out and rearranged the baby on the floor with its bottle, and that he returned to the bedroom to make another telephone call. When he returned to the living room, the baby was not breathing. Later, when police advised him that the baby had sustained a blow to the head, he testified that he thought the baby had struck the wall when he carried it from the living room into the bedroom to call 911. Still later, he said that he did not believe it was the baby's head that struck the wall but some other part of the baby's body.

The baby was born prematurely and suffered from apnea, which is an ailment in which the person stops breathing. Because of this, the parents had to receive instruction in CPR and had a heart monitor to alert them when the baby was suffering an attack. However, the mother testified that these attacks had stopped sometime prior to the time of his death. The mother testified that when she left the mobile home the baby was lying on the floor taking his bottle, whereas appellant testified that when he went to the bedroom to make the first telephone call the baby was on the couch.

Forensic pathologist Dr. John Pless testified that the baby died of a venous hemorrhage (as opposed to an arterial hemorrhage which would have bled much faster). He testified that a venous hemorrhage such as that suffered by the baby would require anywhere from twenty minutes to six hours to cause a cessation of breathing. Medical testimony indicated that the child suffered a single blow to the side of its head by coming in contact with a flat padded surface, which blow could be from the palm of a person's hand or from contact with any padded surface such as a carpeted floor. The doctors testified that it would be unlikely that the injury suffered by the child would have occurred in a fall from the couch to the carpeted living room floor. On cross-examination, the doctor, after stating the unlikelihood of such a fall causing the damage, stated that "anything was possible but not likely."

█ Appellant claims the evidence is insufficient to sustain his conviction for murder. When we examine the evidence in its entirety in this case, we find that it does not meet the standard of reasonable doubt set forth by Judge Emmert in the case of *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641 and the many cases cited therein. The State's case shows that appellant in fact was alone with the baby for approximately one hour and five minutes, and during that time the baby quit breathing and eventually died from a massive blood clot on the brain. The evidence shows that this injury could have been caused by a slap

from a human hand or by contact with a flat padded surface.

The testimony was that the baby suffered a single blow. There was no evidence of any other bruising or injury to the baby. The evidence also showed that this blow could have been administered anytime from twenty minutes to six hours before the 911 call was made by appellant to summon aid. The evidence is uncontradicted that appellant did not have contact with the child that afternoon and evening until the baby was left alone with him at approximately 8:30. Thus, under the State's evidence, the blow suffered by the child could well have occurred prior to the child being left in the care of appellant. There is, of course, the possibility that appellant in fact did deliberately inflict the injury upon the child. However, as stated in *Baker, supra* we cannot convict on a suspicion of guilt.

 The burden is upon the State to establish by credible evidence beyond a reasonable doubt that the person is guilty of the crime charged. *Id.* There is no evidence in this case from which a prudent person could find beyond a reasonable doubt that any person, let alone appellant, deliberately injured the child. Appellant's statements to officers shortly after the incident were somewhat conflicting as to whether the baby was on the couch or on the floor or whether some part of its body bumped the wall as he carried it into the bedroom to call 911. However, there is nothing so conflicting in appellant's recitation of facts as to indicate guilt. He was responding to specific questioning in a highly accusatory framework and at best his answers reflect confusion rather than guilt.

The only hint of evidence of any prior abuse of the child was the testimony of the mother that once when the child was crying, appellant went in, laid down on the bed beside the baby, placed a pillow on the child, and then removed it. When asked if she was alarmed by this, she said she was not. She did not think appellant was abusing the child at that time.

Both appellant and the State cite several cases where defendants have been convicted of child abuse. In almost all of those cases, the children had suffered multiple injuries over a period of time prior to their deaths. In this case, we have no such injuries. One can merely guess that appellant may have injured the child. This does not fit the requirement of credible evidence of guilt beyond a reasonable doubt. *Id.*

Under the ruling of the United States Supreme Court in *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, we find that there being insufficient evidence to support appellant's conviction, this case must be remanded to the trial court with instructions to enter a judgment of acquittal.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.