Darryl G. FORREST, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 49S00–0012–CR–748.

Supreme Court of Indiana.

Nov. 15, 2001.

Lesa Lux Johnson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Darryl G. Forrest, was convicted of murder[2] for a 1999 incident in Indianapolis, Indiana, that resulted in the death of fourteen-month-old Xavier Hill. The defendant was sentenced to sixty years in prison.

In this direct appeal, the defendant makes two claims: (1) that the trial court erred in allowing the prosecution to use a peremptory challenge to strike the only African–American juror on the venire panel; and (2) that there was insufficient evidence to convict the defendant of murder. We affirm his conviction.

### Peremptory Challenge

■ The defendant asserts that the trial court erred in denying his claim that the prosecution's use of a peremptory strike to exclude the only African American individual on the venire panel violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). There are three steps to resolve a *Batson* claim in the trial court. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834, 839 (1995). First, the party contesting the challenge must make out a prima facie case of racial discrimination by demonstrating that:

> (1) the juror is a member of a cognizable racial group; (2) [the challenging party] has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race.

*Wright v. State*, 690 N.E.2d 1098, 1104–05 (Ind.1997) (citing *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88). Second, upon such a showing, the burden of production shifts to the proponent of the peremptory challenge to provide a race-neutral explanation. *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770, 131 L.Ed.2d at 839. If the explanation, on its face, is based on something other than race, the explanation will be deemed race-neutral. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991). Third, the trial court must determine whether the party contesting the peremptory challenge has proved purposeful racial discrimination. *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839.

■ Upon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous.

---

2. Ind.Code § 35–42–1–1.

*McCants v. State*, 686 N.E.2d 1281, 1284 (Ind.1997); *Williams v. State*, 669 N.E.2d 1372, 1379 (Ind.1996) (citing *Hernandez*, 500 U.S. at 364, 111 S.Ct. at 1868–69, 114 L.Ed.2d at 408–09); *see also Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21(trial court's finding "largely will turn on evaluation of credibility [and should be given] great deference").

In the present case, the State sought to exclude from jury service the only prospective juror in the venire pool who was African American. In response to the defendant's *Batson* objection, the State stated, "[The prospective juror] only got forty-five minutes of rest.... [A]nd ... when [defense counsel] was telling his jokes ... she responded very well to him and we thought she favored him. Those are the reasons for the strike." Record at 126. Defense counsel then noted that although the prospective juror had only gotten forty-five minutes of sleep the night before, she said during voir dire that she would be fine for the rest of the day. *Id.* According to the record, when asked if she would be able to sit and listen closely to the evidence, the woman said, "I have to say I have had problems. I only had about forty-five minutes rest. But I've heard basically what you've said." Supp. Record at 3. She then appeared to express some confusion about an earlier discussion during the voir dire. *Id.* The trial court then overruled the defendant's objection.

■ This Court has held that using a peremptory challenge to remove the only prospective African–American juror does "raise an inference that the juror was excluded on the basis of race." *McCants*, 686 N.E.2d at 1284. In the present case, the State responded to the defendant's objection with an ostensibly race-neutral reason for the challenge. It thus became the responsibility of the trial court to determine from all the circumstances whether the defendant had proved purposeful racial discrimination by the State. Reviewing the trial court's ruling deferentially, as we must, we find no error in its decision to overrule the objection and permit the peremptory challenge.

### Sufficiency of the Evidence

■ The defendant asserts that the State did not present evidence sufficient to prove that he killed Xavier Hill knowingly or intentionally. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging the credibility of the witnesses, we conclude that no reasonable fact-finder could find the elements of the crime proved beyond a reasonable doubt. *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind.2000); *Webster v. State*, 699 N.E.2d 266, 268 (Ind.1998); *Hodge v. State*, 688 N.E.2d 1246, 1247–48 (Ind.1997).

■ "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–1. The defendant acknowledges that the "knowingly" element may be inferred from surrounding circumstances. Br. of Appellant at 9; *see, e.g., Lewis v. State*, 740 N.E.2d 550 (Ind.2000); *Anderson v. State*, 681 N.E.2d 703 (Ind.1997).

■ The facts favorable to the judgment show that the defendant was watching a fourteen-month old child while the child's mother ran errands. When the mother returned from her first errand, she saw that the defendant was playing with the child on the couch, and she told him to stop. She then left the house again, and when she returned home approximately ten minutes later, the child was having difficulty breathing and he had gone limp. When paramedics arrived, the child had no pulse and no blood pressure. He was

pronounced dead less than an hour later. The autopsy revealed that the child died of a blunt force injury to his back with a laceration of his heart. He had suffered three blows: one to the front of his head, one to the back of his head, and one to his back. At trial, a forensic pathologist testified that the child's death was caused by a severe force from the back, as though he had been dropped from a height of several stories. The child was injured at or near the time of his death. When questioned, the pathologist agreed that the child might have sustained his injuries when he hit a couch, but he would have had to hit a solid part of the couch three times. The pathologist also agreed that it was possible that the child had been thrown against a wall, where he suffered the blows to his back and head, and then hit the floor, where he would have sustained the injury to his forehead. The defendant maintained that he had been swinging the child around in circles when he tripped and lost his grip on the child. He testified that he did not see where the child landed, but he found the child lying on the couch. When the mother returned home, the defendant was cleaning something from the couch. The child was lying on the floor, but the mother noticed that "he wasn't breathing right." Record at 187. When she picked up the child, "his head went back, his eyes rolled in his head and his body was just limp." Record at 188.

The defendant argues that there was no evidence presented that would show that he had lashed out at any of the children or their mother the day that the child died. He also compares his case to *Moriarity v. State*, 620 N.E.2d 696 (Ind.1993) in which this Court held that the evidence was insufficient to support the conviction of another defendant found guilty of murdering an infant. In that case, the child died as a result of one blow to the head that might have occurred at any time from twenty minutes to six hours before the defendant

called 911, and the defendant had been watching the child for approximately one hour when he called for help. *Moriarity*, 620 N.E.2d at 697. The Court held that it was impossible for the jury to find the defendant guilty beyond a reasonable doubt as the blow the child suffered "could well have occurred prior to the child being left in the care of appellant," and "[o]ne can merely guess that appellant may have injured the child." *Moriarity*, 620 N.E.2d at 698.

In contrast to *Moriarity*, however, here the child died from a severe blunt force injury at or near the time of his death. Approximately ten minutes before his mother found his injured body, the child had been actively engaged in normal activities. During this time, the child had been in the defendant's exclusive care. The defendant's testimony was inconsistent with the medical evidence from the autopsy.

From the evidence and resulting reasonable inferences, a reasonable fact-finder may have concluded beyond a reasonable doubt that the defendant knowingly or intentionally killed the child. The evidence was sufficient to support the defendant's murder conviction.

### Conclusion

The defendant's conviction is affirmed.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.