LaMar **WILLIAMS**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0402–CR–114.

Court of Appeals of Indiana.

Dec. 8, 2004.

Mark Small, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

LaMar Williams was found guilty by a jury of possession of cocaine as a Class C felony, resisting law enforcement as a Class D felony, battery as a Class A misdemeanor, and resisting law enforcement as a Class A misdemeanor. Williams now appeals his convictions and sentences. We affirm.

*Issues*

Williams raises three issues for our review, which we restate as the following:

1. Whether the trial court properly overruled Williams' *Batson* challenge;

2. Whether the State presented sufficient evidence to sustain Williams' convictions; and

3. Whether the trial court properly sentenced Williams.

*Facts and Procedural History*

At around 2:30 a.m. on October 11, 2003, Indianapolis Police Department ("IPD") Officer Jose Torres was on routine patrol when he observed Williams and Amanda Vasquez sitting in a vehicle parked behind a vacant building. Officer Torres approached the vehicle and asked Williams, the driver, for his operator's license. Williams complied, and before Officer Torres began walking to the back of Williams' vehicle to obtain the license plate number, Officer Torres ordered Williams and Vasquez to keep their hands visible. Despite this order, Officer Torres observed Williams put his hands down near the seat area, out of visibility, twice.

At that time, IPD Officer Jason Rakaska arrived to assist Officer Torres. Officer Torres ordered both Williams and Vasquez out of the vehicle, and he performed a patdown search on Williams for weapons, due to Officer Torres' concern about Williams putting his hands near the seat area after being ordered not to do so. During the patdown search, Officer Torres felt two cigarette packs in Williams' pant pocket and asked that he remove them. Instead of complying, Williams pushed Officer Torres and began struggling with both Officer Torres and Officer Rakaska. At one point during the physical struggle, Officer Rakaska struck Williams with his baton, injuring Williams.

During the struggle, Vasquez fled the scene, and Williams made it back to his vehicle and drove away. Officers Torres and Rakaska pursued Williams in their police cruisers, with Officer Rakaska following directly behind Williams. At the intersection of State Street and Bates, Officer Rakaska observed Williams throw a white rectangular object out of the vehicle and onto the street. Officer Rakaska reported his observation on the police radio. IPD Officer Cameron Brosseau heard this information over the radio and proceeded to the intersection to search for the object. In the middle of the street at the intersection of State Street and Bates, Officer Brosseau found a white cigarette package with blood on it. Inside the cigarette package were six individually wrapped baggies of crack cocaine, which weighed 40.2 grams.

The vehicle chase led to the Wishard Hospital Emergency Room entrance. Williams exited his vehicle and began to walk inside the hospital entrance, but IPD officers on the scene deployed a canine officer to apprehend Williams. The canine officer bit Williams on his left thigh, so Williams tried to push the canine officer away. As a result, another officer on the scene sprayed Williams in the face with pepper spray. When the pepper spray did not subdue Williams, another officer twice used a Taser gun on Williams. Eventually, the officers were able to apprehend Williams.

The State subsequently charged Williams with dealing in cocaine, a Class A felony; possession of cocaine, a Class C felony; resisting law enforcement, a Class D felony; battery, a Class A misdemeanor; resisting law enforcement, a Class A misdemeanor; and striking a law enforcement animal, a Class A misdemeanor. A jury acquitted Williams of dealing in cocaine as a Class A felony and striking a law enforcement animal as a Class A misdemeanor, but found him otherwise guilty as charged. The trial court sentenced Williams to an aggregate sentence of nine years in the Indiana Department of Correction, two years of which were suspended. Williams now appeals his convictions and sentences. Additional facts will be provided as necessary.

### Discussion and Decision

### I. *Batson* Challenge

Williams first contends his convictions should be overturned because, during *voir dire,* the State made a racially-based peremptory challenge in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

### A. Standard of Review

Resolving a *Batson* claim involves a three-step process. *Forrest v. State,* 757 N.E.2d 1003, 1004 (Ind.2001). First, the defendant must establish a prima facie case of racial discrimination by showing the following: (1) the State used a peremptory challenge to remove a member of a cognizable racial group from the jury pool; and (2) the facts and circumstances infer that the State used its peremptory challenge to exclude a potential juror because of his/her race. *Brown v. State,* 751 N.E.2d 664, 667 (Ind.2001) (quoting *Williams v. State,* 700 N.E.2d 784, 786 (Ind.1998)). Once the defendant establishes this prima facie case, the burden of production shifts to the State to provide a race-neutral explanation for removing the potential juror. *Forrest,* 757 N.E.2d at 1004. An explanation is "race-neutral" if, on its face, the explanation is based on something other than race. *Id.* Finally, the trial court must determine whether the defendant has proved purposeful racial discrimination. *Id.* On appellate review, we give great deference to the trial court's decision and will set aside that decision

only if it is found to be clearly erroneous. *Id.* at 1004–05.

### B. Mike Futch

In the instant case, the State used a peremptory challenge to strike Mike Futch, an African–American potential juror. Williams objected, claiming that the State's use of the peremptory challenge was in violation of *Batson.* The State responded,

> Your Honor, the State's response is to Mr. Futch, he was seated up in the top left part of the [jury] box. When I questioned him he seemed to be in an almost jovial mood even though I reminded him this was an A-felony, narcotics; he still would laugh and joke, making light of the situation. Further more I asked him specifically as to substance did any of my questions cause [him] to think. He said "No". I even reminded him again; I asked about narcotics and he said; "None of those questions I asked him made him think one way or the other". Seems to me he was apathetic to being a juror. I don't think he could take his duty to being a juror seriously by his laughing and joking with me your Honor.

Tr. at 26–27. The trial court overruled Williams' *Batson* objection, finding that Futch appeared to display a dismissive attitude with respect to the case, and that the State had not used its peremptory challenges on other African–American potential jurors.

Employing the three-step process, we hold the trial court's decision in overruling Williams' *Batson* objection was not clearly erroneous. Even though it is unclear whether the trial court found that Williams established a prima facie case of racial discrimination, such a finding is irrelevant because the State provided a race-neutral explanation for its peremptory challenge of Futch. Furthermore, the State did not use its peremptory challenges on other African–American potential jurors in the pool. Thus, Williams did not prove purposeful racial discrimination by the State.

### II. Sufficiency of the Evidence

Williams next contends the State failed to present sufficient evidence at trial that the cocaine found on the street belonged to Williams. We disagree.

### A. Standard of Review

Our standard of review for sufficiency of the evidence claims is well settled. We will neither reweigh the evidence nor judge the credibility of the witnesses. *Green v. State,* 808 N.E.2d 137, 138 (Ind. Ct.App.2004). Instead, we consider the evidence and the reasonable inferences that can be drawn therefrom. *Id.* If there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt, we will affirm the conviction. *Id.* Circumstantial evidence alone may support a conviction. *Id.*

### B. Sufficient Evidence

At trial, Officer Torres testified that while he and Officer Rakaska were pursuing Williams, Officer Rakaska told other officers on the radio that Williams threw objects out of the vehicle onto the street at the intersection of State Street and Bates. Officer Rakaska testified that Williams dropped a "white rectangular object" out of the vehicle window at that intersection. Tr. at 98. Furthermore, Officer Brosseau testified that he searched the intersection of State Street and Bates shortly after Officer Rakaska's report over the radio and found a white cigarette package with a red stripe around it and blood on it. During his testimony, Williams admitted that he threw a cigarette pack out of the vehicle window during the chase and that it

was likely the cigarette pack had blood on it. Thus, the State presented sufficient evidence to link the cocaine found in the cigarette pack to Williams.

### III.   Enhanced Sentence Under *Apprendi/Blakely*

Williams was convicted of possession of cocaine as a Class C felony, resisting law enforcement as a Class D felony, battery as a Class A misdemeanor, and resisting law enforcement as a Class A misdemeanor. The trial court sentenced Williams to six years, two years of which were suspended, for the Class C felony; the maximum sentence of three years for the Class D felony; and one year for each of the Class A misdemeanors. All sentences were to run concurrently with the Class C felony sentence, except for the Class D felony sentence, which was to be served consecutively, for an aggregate term of nine years (two years of which were suspended). Williams now argues that the trial court's imposition of the maximum sentence for the Class D felony did not comport with *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).[1]

■ "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The prescribed

"statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. In other words, the relevant "statutory maxi-

mum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

*Blakely*, 124 S.Ct. at 2537 (emphasis in original). Under Indiana law, after a jury returns a guilty verdict, the trial court can only impose the presumptive sentence, as outlined in the statute, without finding any additional facts. Therefore, the presumptive sentence for an offense is the prescribed statutory maximum for *Apprendi/Blakely* purposes.

#### A.   Waiver

■ We note at the outset that the State asserts that Williams has waived this issue on appeal because he failed to raise an objection at the time of sentencing. We disagree. The trial court sentenced Williams on January 15, 2004. The United States Supreme Court did not decide *Blakely* until June 24, 2004. Therefore, Williams could not raise an objection under *Blakely* at the time of his sentencing.

■ Nevertheless, the State argues that Williams should have raised an objection under *Apprendi*. Indiana appellate courts have considered an *Apprendi* challenge to an enhanced sentence in a non-capital case only once. In *Parker v. State*, 754 N.E.2d 614 (Ind.Ct.App.2001), we considered whether enhancing a defendant's sentence for using a firearm during the commission of an offense was constitutional under *Apprendi*. In *Parker*, we reiterated the rule, under *Apprendi*, that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Parker*, 754 N.E.2d at 618. Referring to the term "prescribed

---

**1.** Williams does not argue that his sentences for the Class C felony conviction or the misde-

meanor convictions are erroneous.

statutory maximum," we noted the following:

> A Class A felony has a sentencing range from a presumptive thirty years to a maximum of fifty years. See Ind. Code § 35–50–2–4. Parker received forty years with a five-year enhancement. The application of the enhancement for use of a handgun in Parker's case did not, as a result, increase the maximum penalty for his offense.

*Parker,* 754 N.E.2d at 618 n. 7. Therefore, we impliedly held the "prescribed statutory maximum" under our sentencing statutes referred not to the presumptive sentence before any sentencing enhancements, but to the maximum sentence in the sentencing range provided by statute that a defendant could receive for his offense. Williams received three years for his Class D felony conviction, which was the maximum sentence in the sentencing range provided by our legislature for Class D felonies. Without expressing any opinion on the retroactivity of *Blakely,* it was reasonable for Williams to believe at the time of his sentencing that, because he was sentenced within the sentencing range for a Class D felony provided by our legislature, his sentence did not violate *Apprendi,* considering our decision in *Parker.* Thus, Williams has not waived this issue.

### B. Enhanced Sentence

■ For Williams' Class D felony conviction, the presumptive sentence was one-and-one-half years. *See* Ind.Code § 35–50–2–7. The trial court sentenced Williams to the maximum sentence of three years for this offense. In sentencing Williams, the trial court made the following statement, in pertinent part:

> In terms of aggravating circumstances I find [Williams'] criminal history is something that cannot be ignored.

[Williams'] history suggests that he is likely to commit another offense. And he is in need for rehabilitation and can best be provided by a [penal] facility. The nature [and] circumstances of the [underlying offense] must also be considered in aggravation, not so much the quantity of drugs but Mr. Williams' behavior once he was discovered with those drugs.... The testimony of the officers was that a high-speed chase ensued that lasted I believe it went for almost twelve (12) miles. Mr. Williams also cause[d] three (3) accidents in his head long run from the police. His actions indicate that he had no regard for the safety of the people around him. All he wants [sic] to do was get away from his own actions. I think his blatant disregard for the safety of the citizens of this county must be considered as an aggravating circumstance. In terms of mitigation [Williams] is relatively young and he does have three (3) dependents.... As to Count III, resisting [l]aw [e]nforcement as a [Class] D felony. The court again finds the aggravating circumstances outweigh the mitigating circumstances sufficient to justif[y] deviation fro[m] the presumptive sentence. And to Count III, the court imposes a three (3) year sentence at the Department of Corrections [sic] to be served consecutive to the sentence on Count II.

Tr. at 257–59.

■ A single aggravating circumstance can justify the imposition of an enhanced sentence. *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002). Therefore, we need not address whether the trial court's finding of other aggravating circumstances was improper under *Blakely* because Williams' prior criminal history, standing alone, was sufficient to enhance his sentence. Williams' prior criminal history

consisted of the following: a 1994 juvenile adjudication for burglary, a Class C felony if committed by an adult; a 1997 adult conviction for possession of cocaine as a Class D felony; a 1998 arrest for carrying a handgun without a license as a Class C felony and as a Class A misdemeanor; a 1999 arrest for dealing in cocaine as a Class A felony, possession of cocaine as a Class C felony, maintaining a common nuisance as a Class D felony, and possession of marijuana as a Class A misdemeanor; and a 2000 arrest for driving while suspended as a Class A misdemeanor. Under *Apprendi/Blakely,* only a prior *conviction* may be used to enhance a defendant's sentence without a finding of additional facts by a jury. Williams had two prior convictions: a 1994 juvenile adjudication for burglary, a Class C felony if committed by an adult; and a 1997 conviction for possession of cocaine as a Class D felony. Thus, Williams' criminal history alone was sufficient to support the trial court's imposition of the maximum sentence.

### Conclusion

The State did not violate Williams' constitutional rights under *Batson* when it used a peremptory challenge to remove an African–American from the jury pool. Furthermore, the State presented sufficient evidence to sustain Williams' convictions. Finally, the trial court did not err in enhancing Williams' sentence for his Class D felony conviction. Therefore, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, C.J., concurs.

BAKER, J., concurs in result with opinion.

BAKER, Judge, concurring in result.

I agree with the result reached in this case, but I part ways with the view espoused by the majority that Williams did not waive the *Blakely* issue.

Here, at no time before the trial court did Williams raise any objection—either specifically under *Apprendi* or generally under the Sixth Amendment right to trial by jury—to the court's finding of aggravating circumstances or imposition of an enhanced sentence. Thus, I believe that the issue has been waived. *See Mitchell v. State,* 730 N.E.2d 197, 201 (Ind.Ct.App. 2000) (holding that when a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule upon it at the appropriate time, he is deemed to have waived that possible error).

The United States Supreme Court issued its opinion in *Apprendi,* upon which the defendant in *Blakely* objected to his "exceptional" sentence, well before Williams's sentencing hearing in January 2004. In my view, that the *Apprendi* rule was extended in *Blakely* is of no moment, inasmuch as Williams should have objected on *Apprendi* grounds and preserved this issue, just as the defendant in *Blakely* did.

That said, while my colleagues in this case go on to decide that Williams's sentence was proper in light of his prior criminal history—waiver issue aside—I concur with the decision to affirm the trial court's judgment.