Michael COLLIER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–1105–CR–229.

Court of Appeals of Indiana.

Dec. 28, 2011.

Deborah Markisohn, Marion Co. Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Here, we are reminded of the old adage that it is not only what you say but how

you say it. This is precisely why we grant trial courts the responsibility to determine whether a defendant has made his or her case in accordance with *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which prohibits the exercise of racially discriminatory peremptory challenges. In this case, although the trial court determined that the *Batson* challenge was met, the defendant's motion was denied because there was a "fair enough jury" to proceed. Under these circumstances, we must conclude that the conviction must be set aside.

Appellant-defendant Michael Collier appeals his conviction for Resisting Law Enforcement,[1] a class D felony. Specifically, Collier argues that his conviction must be reversed because the trial court erred when it found that Collier had satisfied the *Batson* requirements but determined that the case should proceed to trial. Collier maintains that once the trial court determines that purposeful discrimination has been established, *Batson* requires either the peremptory strikes should be denied or a mistrial should be declared. Moreover, Collier claims that he did satisfy the requirements of *Batson* in light of the deputy prosecutor's "tainted race-neutral reasons" to explain his use of peremptory strikes to remove African–Americans from the venire. Appellant's Br. p. 1. Concluding that the trial court erred in denying Collier's request for a mistrial pursuant to *Batson,* we reverse Collier's conviction and remand for a new trial.

## FACTS

On November 24, 2009, at approximately 3:30 a.m., Marian University Police Officer Brian Hedger was on patrol when he observed Collier speeding through a residential area. Officer Hedger, who was in a marked patrol car, began to follow Collier and activated his lights. Collier then drove through a stop sign without braking and crossed the center line into oncoming traffic.

At this point, Officer Hedger activated his siren. Collier sped onto another road, disregarded a second stop sign, and made another turn. Collier eventually slowed down and stopped. As a result of the incident, the State charged Collier with resisting law enforcement, a class D felony. The State also charged Collier with battery,[2] a class A misdemeanor, which related to an incident with a female victim that had occurred earlier that evening.

During jury selection that commenced on March 10, 2011, the deputy prosecutor exercised peremptory challenges as to three of the four African–American members of the panel, M.R., C.S., and B.M. The one unchallenged African–American member of the panel, N.N., was seated on the jury. Collier alleged that the peremptory challenges were racially discriminatory, and in rebuttal the deputy prosecutor offered race-neutral reasons for each strike.

More specifically, the deputy prosecutor noted that M.R. claimed that he had been erroneously charged with the crime of false informing at some point. The deputy prosecutor also observed that M.R. had his head down and was staring at the floor, thus indicating that he might not pay attention to the trial. In response, the trial judge "didn't think it was a big factor," and commented that "[he] was probably doing the same thing." Tr. p. 76.

The deputy prosecutor then pointed out that two of C.S.'s family members had been convicted of criminal offenses. C.S. refused to give specifics as to how she

---

1. Ind.Code § 35–44–3–3(b)(1)(A).

2. Ind.Code § 35–42–2–1.

would assess witness credibility because if she did, the State's witness would know what to do or not do. C.S. also discussed an occasion when she allegedly was unjustly stopped by a police officer, even though she admitted committing the violation.

As to B.M., the deputy prosecutor noted that when asked why a person might flee from the police, she responded that it might be due to prior "intimidation" by law enforcement, and the fact that she was a special education teacher. *Id.* at 74–75. The trial court found that the State's reason for striking B.M.—that she was a special education teacher—"may be a reason, may not." *Id.* at 76. The trial court then concluded that B.M.'s removal from the venire was its "biggest concern." *Id.* at 76–77.

After hearing the arguments, the trial court stated to Collier's counsel that "you have made your case, . . . but I am going to overrule the motion for the challenge. I think we have a "fair enough jury we can go forward under these circumstances." *Id.* at 75–77. The trial court then overruled Collier's challenge under *Batson* and denied his motion for a mistrial. Following the presentation of the evidence, Collier was found guilty as charged and he now appeals.

## DISCUSSION AND DECISION

■ In resolving Collier's challenges under *Batson,* we initially observe that the exercise of racially discriminatory peremptory challenges is constitutionally impermissible. *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997). There are three steps to resolving a claim under *Batson. Forrest v. State,* 757 N.E.2d 1003, 1004 (Ind.2001). First, a defendant must establish a prima facie case of purposeful racial discrimination by showing that: 1) the prosecutor used peremptory challenges to remove members of a cognizable racial

group from the jury pool; and 2) the facts and circumstances raise an inference that the prosecutor used those strikes to exclude potential members from the jury because of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. 1712. The United States Constitution "forbids striking even a single prospective juror for a discriminatory purpose." *Snyder v. Louisiana,* 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008).

Second, when a prima facie case is established, the burden of production shifts to the State to provide a race-neutral explanation for the strike. *Batson,* 476 U.S. at 97, 106 S.Ct. 1712. Finally, if a race-neutral explanation is offered, the trial court must decide if the challenger has proven purposeful discrimination. *Id.* at 98, 106 S.Ct. 1712.

■ Generally, if the State's reason for the challenge is facially based on something other than race, it is deemed race-neutral. *Forrest,* 757 N.E.2d at 1004. However, as the United States Supreme Court observed in *Miller–El v. Dretke,* 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005): "Some stated reasons are false . . . sometimes a court may not be sure unless it looks beyond the case at hand. . . . Hence, a defendant may rely on 'all relevant circumstances' to raise an inference of purposeful discrimination." The trial court must decide whether the defendant, as the opponent of the strike, has proven purposeful racial discrimination. *Forrest,* 757 N.E.2d at 1004.

■ We also note that the prosecutor's proffered explanation "must be more than a mere denial of discriminatory motive." *Love v. State,* 519 N.E.2d 563, 565 (Ind. 1988). The United States Supreme Court in *Miller–El v. Dretke* has determined that "if a prosecutor's proffered reason for striking a black panelist applies just as

well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." 545 U.S. at 241, 125 S.Ct. 2317. Finally, we note that the trial court's decision as to whether a peremptory challenge was discriminatory is given "great deference" on appeal and will be set aside only if found to be clearly erroneous. *Killebrew v. State*, 925 N.E.2d 399, 401 (Ind.Ct.App.2010), *trans. denied.*

■ In this case, our review of the record shows that Collier made a prima facie showing of discrimination based on race with regard to the three prospective jurors. Tr. p. 70–75. As noted above, the deputy prosecutor then advanced his reasoning for using his peremptory strikes to remove the three African Americans from the venire. Thus, under *Batson*, the trial court was required to proceed to the third step—deciding whether the opponent of the peremptory strikes had carried the burden of proving purposeful discrimination. And, as discussed above, the trial court expressed both skepticism and concern about the reasons that the State proffered to explain the peremptory strikes. *Id.* at 75–77. Thereafter, it determined that, based on the deputy prosecutor's explanation and characterization of his reasons for the peremptory strikes, Collier had "made [his] case" and established purposeful discrimination on the part of the State. *Id.* at 77. However, the trial court denied Collier's *Batson* challenge and a motion for mistrial.

In light of these circumstances, we find the result and rationale advanced in *Kribs v. State*, 917 N.E.2d 1249 (Ind.Ct.App. 2009), instructive in this case. Following the presentation of the evidence at a bench trial, the trial court expressly found that Kribs was unaware that he was carrying a handgun in his pocket while at an airport. Nonetheless, the trial court convicted the defendant of entering a controlled area of an airport with a weapon or explosive, a class A misdemeanor.

On appeal, we reversed the conviction in light of the trial court's contradictory findings. More specifically, we determined that

> Had the trial court remained silent, we would likely have affirmed Kribs's conviction. In such a situation, we could have inferred that the trial court did not believe Kribs's version of events or that it gave more weight to the evidence highlighted by the State that Kribs always carried the handgun in his jacket pocket. We would not have second-guessed such an assessment of the evidence.

*Id.* at 1251.

Like the contradictory findings in *Kribs*, we must conclude that the trial court erred in permitting this matter to go to trial in light of its initial determination that Collier had met the challenge under *Batson*. Although *Batson* does not specify the remedy when there has been a showing of purposeful discrimination during voir dire, the trial court's decision to allow the matter to proceed to trial certainly violated Collier's right to due process as well as the jurors' right to serve on the panel.

Had the trial court wished to avoid a mistrial, it could have denied the deputy prosecutor's peremptory strikes and seated M.R., C.S. and B.M. on the jury. The trial court could also have conducted a new round of voir dire with a different venire. Or, the trial court could have granted Collier's motion for a mistrial. But once the trial court determined that Collier "made his case," tr. p. 77, in finding that the State had engaged in racially discriminatory peremptory challenges, we must conclude that the trial court erred in allowing the matter

to proceed. In other words, the trial court's statement that there was a "fair enough jury" to go forward impermissibly violated the standard under *Batson.* Thus, we are compelled to reverse Collier's conviction and remand for a new trial.

The judgment of the trial court is reversed and this cause is remanded for a new trial.

DARDEN, J., and BAILEY, J., concur.