**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEVEN P. MEYER**
**CARLOS I. CARRILLO**
Ball Eggleston PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARTANYAN PORCHE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1206-CR-328 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-1108-MR-2

**June 18, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Dartanyan Porche appeals his conviction and fifty-five-year sentence for felony murder. On appeal, he claims that: (1) the State violated local filing rules and engaged in impermissible forum shopping when it filed his charges in the trial court where a co-defendant had pending charges; (2) the trial court erred when it accepted the State's race-neutral explanation for a peremptory strike against the only African-American prospective juror; (3) the State presented insufficient evidence to sustain his conviction; and (4) the trial court abused its discretion during sentencing. Finding no validity in Porche's claims, we affirm.

**Facts and Procedural History**

The facts most favorable to the jury's verdict indicate that on July 28, 2011, Porche and a man named Michael Foster were hanging out and smoking marijuana. They went and picked up Foster's fifteen-year-old cousin, N.P., and then went to Kevin Williams's house. While sitting around the house smoking more marijuana, Porche and Foster began discussing "hittin a lick," which is a street term for robbery. Tr. at 187.

The four individuals left Williams's house and went to another place to smoke marijuana with some women. They eventually ended up at the apartment of one of Foster's friends, Danielle Tutt. After about twenty minutes, Tutt had to leave. Porche and the other three individuals stayed at her apartment. While they were at Tutt's apartment, a man named Clarence Smith called Porche to inquire whether anyone had guns for sale. Foster instructed Porche to tell Smith that they had two handguns, a "9 and 38," for sale for $500. *Id*. at 201-

02. Porche knew that Foster only had one gun and that they were not really going to sell Smith any guns. As Porche and Foster stood in the bedroom of Tutt's apartment, they formulated a plan to rob Smith. They planned to have Porche meet Smith at the apartments across the street. Porche would "lure" Smith into one of the hallways and Foster would come out of hiding with his gun so that Porche could steal Smith's money. *Id*. at 211. Porche called Smith back and asked him to meet at the apartments across the street. Smith told one of his friends that he was going to meet Porche to buy guns.

Porche, Foster, Williams, and N.P. left Tutt's apartment around 9:00 p.m. Williams got in his car, and Porche, Foster, and N.P. began walking across the street. N.P. heard Porche say to Foster "We're going to have to rough him up." *Id*. at 418. Foster ordered N.P. to go back to the car while Porche and Foster went to the apartments. Soon thereafter, Smith arrived at the apartments. Porche went to talk to Smith while Foster hid behind a wall. As Smith and Porche walked into a hallway, Porche did "like a little whistle" to signal Foster to come out with the gun. *Id*. at 214. Foster came out of hiding, held the gun on Smith, and said, "You know what it is." *Id*. Smith pleaded with Porche, and Porche responded, "I don't want to hear that, whatever, where the money at[?]" *Id*. at 215. Porche put his hands in Smith's pockets. Smith tried to pull Porche in front of the gun and then tried to run. Foster shot Smith who fell to the ground. Smith bled to death from his wound.

Porche and Foster ran out of the back of the apartment complex. Williams and N.P. heard the gunshot and immediately drove away. Foster hid the gun in a recycling bin, and then both Porche and Foster were located by Williams and got into his car. Porche told

3

Williams that he was able to get some money from Smith. Williams's car was eventually spotted and followed by law enforcement. Williams stopped his car in a driveway, and Porche, Foster, Williams, and N.P. all fled. Foster, Williams, and N.P. were found hiding in the woods. Porche was apprehended nearby. The following day, law enforcement found $472 in cash near the driveway where Williams had stopped his car.

On August 3, 2011, the State charged Porche with felony murder, class A felony robbery, and class B felony conspiracy to commit robbery.[1] On April 19, 2012, the trial court held a pretrial hearing during which Porche argued that the State failed to comply with Tippecanoe County court rules when it filed his charges in the same court as one of his co-defendants rather than filing his case and having it assigned to one of the Tippecanoe County courts on a random basis. Porche requested that his case be dismissed or refiled by the State. Following a hearing, the trial court denied his request.

A jury trial was held from April 24 to April 28, 2012. The jury found Porche guilty of felony murder, class A felony robbery, and class C felony conspiracy to commit robbery. Following a sentencing hearing on June 14, 2012, the trial court merged Porches' convictions and entered judgment of conviction only on the felony murder conviction. The court imposed a fifty-five-year sentence, with fifty years executed and five years suspended to probation. This appeal ensued.

**Discussion and Decision**

---

[1] The State also charged Porche with class D felony theft and class B felony unlawful possession of a firearm by a serious violent felon. Those charges were later dismissed.

4

## I. Filing of Charges in Accordance with Local Rules

Porche first asserts that the State violated local filing rules and engaged in impermissible forum shopping when it filed his charges in Tippecanoe Superior Court No. 2, in which one of his co-defendant's charges were pending, rather than allowing his case to be blindly or randomly assigned. We disagree.

> Our supreme court has recently explained the dangers of forum shopping as follows:
>
> A criminal defendant has a right to a fair trial before an impartial judge. In the eyes of the public, and certainly of the defendant, a judge's impartiality seems less convincing if the prosecution can select the judge before whom it will be heard. To prevent forum shopping aimed at obtaining a judge believed to be more favorable to the State—even in cases in which the perceived advantage might be open to doubt—this Court has obliged the trial courts of each county to formulate a local rule for the nondiscretionary assigning of all felony and misdemeanor cases. Ind. Crim. Rule 2.2. The judges in each county design a rule that fits with local circumstances and submit the plan for approval by the Indiana Supreme Court.

*Harris v. State*, 963 N.E.2d 505, 506 (Ind. 2012) (some citations omitted). The *Harris* court held that, in a case where the prosecutor has, in fact, violated a local case filing rule, a defendant need not establish prejudice to win a reversal. *Id*. at 507.

At the time the State filed charges against Porche, the Tippecanoe Circuit and Superior Courts had adopted the following local filing rule:

> All cases wherein the most serious charge alleged is Murder, a Class A, B, or C felony and those Class D felonies set forth in paragraph 2 below shall be assigned to Tippecanoe Circuit Court, Superior Court of Tippecanoe County, and Superior Court No. 2 of Tippecanoe County, on a random basis according to the following ratio: ….

Tippecanoe LR79—AR 1(E) Rule 1; Appellant's App. at 25. However, this rule was subject

to exceptions, including cases in which it was alleged that defendants had jointly committed a

crime or crimes. Specifically, paragraph four of the rule provided:

> Where it is alleged that defendants jointly commit a crime or crimes, their cases shall be filed together in the same court. In any such cases where one or more of the defendants has a Class A, B, or C felony case pending or is serving a Class A, B, or C felony sentence, whether executed or suspended, all the cases shall be filed in the court having jurisdiction of the oldest such case.

*Id*. Based upon this exception, the State filed Porche's charges in Tippecanoe Superior Court

No. 2, in which one of his co-defendants, Foster, had prior charges pending, rather than

allowing Porche's case to be assigned on a random basis due to the murder charge.

In support of its decision to file Porche's charges in Tippecanoe Superior Court No. 2,

the State argued to the trial court that new cases, even murder, are not randomly assigned if

that same defendant has a prior case pending. Because Foster had a prior case pending in

Superior Court No. 2, the State interpreted paragraph four as requiring that Foster's new

charges, as well as the charges against Porche and the other co-defendants, be filed in

Superior Court No. 2. The deputy prosecutor, who had nine years of experience filing

murder cases, explained that this filing was consistent with his interpretation of the local

filing rule when defendants jointly commit a crime or crimes, even when the most serious

charge alleged is murder.

The trial court found that this interpretation was "a reasonable one and has been

applied consistently to satisfy the whole purpose of having the rule in the first place which is

to avoid forum shopping." Tr. at 25. Although noting some ambiguity in the rule and the

6

need for future clarification, the court determined that "it's not reasonable to interpret that these three co-defendants should go different ways. The rule quite clearly says that they shouldn't or implies that." *Id*. at 26.

While Porche invites us to interpret the rule to find a clear violation and to conclude that the State engaged in impermissible forum shopping, we decline his invitation. The trial court's reading of its own rule, a rule approved by the standard process, is entitled to some deference on appeal. *See Harris*, 963 N.E.2d at 507. The trial court's interpretation here is a plausible one that we will not second-guess on appeal. We agree with the trial court that no local filing rule violation occurred here.[2]

## II.  Race-Neutral Peremptory Challenge

We next address Porche's contention that the trial court erred when it accepted the State's race-neutral explanation for its peremptory strike against the only African-American prospective juror. The use of a peremptory challenge to strike a potential juror solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Jeter v. State*, 888 N.E.2d 1257, 1262-63 (Ind. 2008) (citing *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986), *modified* by *Powers v. Ohio*, 499 U.S. 400, 405-06 (1991)), *cert. denied*. We apply a three-part test to determine whether the State has improperly used a peremptory challenge to remove a potential juror from the venire solely because of that individual's race:

---

[2] The Tippecanoe County Circuit and Superior Courts have since amended and clarified their filing rules to provide that when it is alleged that defendants jointly commit a crime or crimes, and the most serious charge alleged is murder, the cases shall be assigned together, but on a random basis. Tippecanoe LR79—AR 1(E) (amended effective Sept. 1, 2012).

First, the party contesting the use of a peremptory challenge must make a prima facie showing of discrimination based upon race against the member of the venire. Next, the party using a peremptory challenge may present a race-neutral explanation for using the challenge. If the party seeking to strike a member of the venire provides a race-neutral explanation, the trial court must then decide whether the challenger has carried its burden of proving purposeful discrimination.

*Thompson v. State*, 966 N.E.2d 112, 120 (Ind. Ct. App. 2012) (quotation marks and citations omitted), *trans. denied*.

The burden at the first stage of the analysis is low, requiring the defendant to only show circumstances raising an inference that discrimination occurred. *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012). Regarding the second step in the analysis, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* at 1209 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam)) (additional citation omitted). While the race-neutral reason "must be more than a mere denial of improper motive, the reason need not be particularly 'persuasive, or even plausible.'" *Id.* If the trial court is not persuaded by the race-neutral justification, it is during the third step of the analysis that "'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" *Id*. at 1210.

Because of the importance of the demeanor of potential jurors and the prosecutor when the trial court evaluates a race-neutral explanation for a peremptory challenge, we afford broad latitude to the trial court's decision in such matters. *Killebrew v. State*, 925 N.E.2d 399, 401 (Ind. Ct. App. 2010), *trans. denied*. Upon appellate review, we will set aside the trial court's decision concerning whether a peremptory challenge is discriminatory

only if it is found to be clearly erroneous. *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001).

Here, Porche raised a *Batson* challenge to the State's use of a peremptory strike against Mr. Afolabi, the only African-American prospective juror. The State explained that it struck Afolabi, a retired engineering professor, because of his "very heavy mathematical and engineering background." Tr. at 66. The State pointed out that it had also struck two white jurors with mathematical backgrounds for the exact same reason. The deputy prosecutor explained further, "It has been my experience that those jurors want impossible things and certainty, an absolute certainty, of evidence that can't be provided in the realm of human affairs." *Id.* The deputy prosecutor additionally stated that, due to Afolabi's slight accent, she had "concerns about English being his second language insofar as there are going to be two hundred pages of very fast moving statements in this case." *Id.* at 66.

The trial court accepted the State's explanations and denied Porche's *Batson* challenge. Specifically, the trial court noted that "it's rare for an engineer or a scientist to be seated on the jury," and therefore the State's first explanation for the strike was race-neutral. *Id.* at 67. The court also found the State's second explanation race-neutral, noting that, regardless of whether English is a first or second language, different English dialects sometimes cause "misunderstandings." *Id.* The trial court found the deputy prosecutor's explanations credible, and there is nothing in the record to indicate that the State's reasons were merely pretextual. Porche has not carried his burden to show purposeful discrimination. The trial court's decision in this regard is not clearly erroneous.

### III. Sufficiency of the Evidence

Porche also asserts that the State presented insufficient evidence to support his felony murder conviction. When a defendant challenges the sufficiency of the evidence supporting a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences drawn therefrom that support the finding of guilt. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We likewise consider conflicting inferences in the light most favorable to the conviction. *Id.* It is unnecessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* We will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *Id.*

To prove that Porche committed the offense of felony murder, the State was required to prove that Smith was killed during the commission of or the attempted commission of a robbery. *See* Ind. Code § 35-42-1-1(2) (providing that a person who "kills another human being while committing or attempting to commit . . . robbery . . . commits murder, a felony."); *see also* Ind. Code § 35-42-5-1 (providing that a person who "knowingly or intentionally takes property from another person … by using or threatening the use of force on any person … commits robbery"). Our supreme court has explained that the statutory language "kills another human being while committing" does not restrict the felony murder provision only to instances in which the defendant is the killer, but may also apply equally when, in committing any of the designated felonies, the defendant contributes to the death of

10

any person. *Palmer v. State*, 704 N.E.2d 124, 126 (Ind. 1999). The court further explained that where a defendant reasonably should have foreseen that his felonious conduct would likely create a situation which would expose another to the danger of death, the creation of such dangerous situation is a medium contributing to the death of the victim and the accused may be held accountable. *Id*. To establish guilt pursuant to the felony murder statute, the State need not prove intent to kill, but only the intent to commit the underlying felony. *Luna v. State*, 758 N.E.2d 515, 517 (Ind. 2001).

Here, the State presented evidence that Porche and Foster formulated a detailed plan to rob Smith. Porche arranged a meeting with Smith under the guise of selling guns, initiated contact with Smith when he arrived at the apartment complex, and lured Smith into a hallway. Porche signaled Foster, who then came out of hiding and held a gun on Smith. Porche reached into Smith's pockets to steal money. When Smith struggled and tried to escape, Foster shot and killed Smith. Porche later told Williams that he was able to get some money from Smith before Foster shot Smith. Law enforcement found $472 in cash near a driveway where Porche and his co-defendants had parked a car and fled. Based upon the evidence, the jury could reasonably find beyond a reasonable doubt that Porche had the requisite intent to commit robbery and that he participated, either directly or as an accomplice, in the robbery and murder of Smith.

Porche maintains that most of the evidence against him came from Foster's testimony and that Foster was not a credible witness. Porche further argues that there was insufficient evidence that Smith was killed during a robbery because no money was found on Porche's

person and the money found in the driveway where Williams had stopped his car was not shown to belong to Smith. These are merely invitations for us to reweigh the evidence and reassess witness credibility, tasks not within our prerogative on appeal. The State presented sufficient evidence to support Porche's conviction for felony murder.

## IV. Sentencing

Finally, we address Porche's challenge to his fifty-five-year sentence. Although Porche couches this challenge as a claim that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B), his only arguments are references to the trial court's consideration of aggravating and mitigating factors, which is a sentencing decision reviewed on appeal under an abuse of discretion standard. *See Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. As our supreme court has made clear, inappropriate sentence and abuse of discretion claims are to be analyzed separately. *Id*. at 491. Because Porche fails to differentiate his arguments and makes no attempt to meet his burden to persuade us that his sentence is inappropriate in light of the nature of the offense and his character, *see King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008), we will consider his sentencing challenge solely as an abuse of discretion claim.

A sentencing court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Anglemyer*, 868 N.E.2d at 490. A trial court may abuse its discretion in sentencing by issuing an inadequate sentencing statement, finding aggravating or mitigating factors that are not supported by the record, omitting factors that

12

are clearly supported by the record and advanced for consideration, or by finding factors that are improper as a matter of law. *Id.* at 491.

The trial court here imposed the advisory sentence of fifty-five years for Porche's felony murder conviction. *See* Ind. Code § 35-50-2-3. During sentencing, the trial court found six aggravating factors and two mitigating factors. Porche takes issue with two of the six aggravating factors. Specifically, Porche contends that the trial court improperly considered the fact that he was on probation and pretrial release when he committed the current crimes as an aggravating circumstance. Porche also contends that the trial court abused its discretion when it considered his violation of a no-contact order during the course of the trial as an aggravating circumstance because there was no evidence in the record that he had contact with any witnesses. We address each argument in turn.

Regarding his violation of probation and pretrial release, it is undisputed that at the time of the current offense, Porche was on probation for his April 13, 2011, convictions for criminal trespass and battery. In addition, Porche was also on pretrial release for an October 6, 2010, charge of battery on a child. It was not improper for the trial court to consider these facts as aggravating circumstances. *See Ramon v. State*, 888 N.E.2d 244, 155 (Ind. Ct. App. 2008) (fact that defendant committed a crime while on probation is proper aggravating circumstance); *Perry v. State*, 904 N.E.2d 302, 312 (Ind. Ct. App. 2009) (fact that defendant committed crime while on pretrial release was one of several proper significant aggravators), *trans. denied*. Porche has failed to show that the trial court abused its discretion.

13

Regarding Porche's violation of the no-contact order, the record indicates that, despite the existence of a no-contact order and a separation of witnesses agreement, Porche had telephone contact during the course of the trial with Carmen Beasley, a defense witness and the mother of some of his children. Defense counsel reviewed a transcript of the telephone call and conceded that Porche contacted Beasley and violated the no-contact order as well as the separation of witnesses agreement. Tr. at 818-22. Contrary to Porche's assertion, the record supports the trial court's finding that Porche violated the no-contact order.[3] Again, Porche has shown no abuse of discretion.

The remainder of Porche's argument regarding his sentence is essentially that the trial court abused its discretion by failing to properly weigh and balance aggravating and mitigating factors. This argument is not available on appeal. Trial courts are no longer obliged to weigh aggravating and mitigating factors against each other when imposing sentence, and a court cannot be said to have abused its discretion in failing to assign proper weight to such factors. *See Anglemyer*, 868 N.E.2d at 490. We affirm Porche's conviction and sentence.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.

---

[3] Porche's argument on appeal ignores the undisputed evidence of the telephone contact and centers upon an incident of a suspected prior violation of the no-contact order that was based upon Beasley's behavior of parading Porche's children around outside the courthouse wearing "Free My Daddy" t-shirts. Tr. at 631. The State concedes, and the trial court acknowledged, that Beasley's actions were not conclusive as to whether Porche had actually communicated with her or his children at that point. *Id*. at 634.