**Richard MARROW, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 86A05–9801–CR–23.**

Court of Appeals of Indiana.

July 31, 1998.

Susan K. Carpenter, Public Defender, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Richard Marrow, Jr. appeals his convictions of burglary, a Class C felony [1], and theft, a Class D felony [2].

We reverse and remand.

1. Ind.Code 35–43–2–1.

## ISSUE

The following issue is dispositive: whether the State presented sufficient evidence to support Marrow's convictions.

## FACTS AND PROCEDURAL HISTORY

Gerald Silver used a shed on his father's farm as a workshop. The overhead door to the shed was kept shut when no one was using the shed, but the door was not locked. At about 11:30 a.m. on December 22, 1996, Silver's neighbor, Grant Hembree, noticed that the door to the shed was open. Hembree went to the shed and observed that Silver's air compressor and a large number of tools were missing. Hembree left everything as he had found it, returned home, and tried all afternoon to call. Silver and his father. At approximately 6:30 p.m., Hembree reached Silver and told him about the missing items.

Silver went to his father's property and began to inspect the workshop. He found a set of keys in the shed that he did not think belonged to anyone he knew. He reported the break-in and theft to the police, who later ascertained that the keys belonged to Marrow through a mailbox key found on the key ring. Marrow was subsequently charged with, and convicted of, burglary and theft. He now appeals.

## DISCUSSION AND DECISION

Marrow contends that his convictions should be set aside because the only fact proved by the State was that his keys were found in the shed. He notes that he testified at trial that the keys had been stolen and argues that ownership of an item does not establish possession when the evidence also establishes that others had access to the item. He also notes that the keys were not discovered until hours after the door was left open and argues that it cannot be reasonably inferred that the keys were left at the time the break-in and theft occurred.

The State contends that the evidence is sufficient to support the convictions. It ar-

2. Ind.Code 35–43–4–2.

gues that the presence of Marrow's keys was similar to the presence of his fingerprints and that the presence of the keys after the burglary and theft was sufficient, standing alone, to support the jury's verdict. It further argues that the following evidence establishes "consciousness of guilt": (1) although Marrow was sure of the location of the service station where he lost his keys, he was unsure whether it was a Marathon or a Shell Station; (2) Marrow "kind of trembled a little bit" when the police informed him that his keys were found in the shed: (3) Marrow's explanation that the post office had, in the past, forwarded mail to his home was contradicted by the postmaster who testified that the post office does not forward mail unless the customer fills out a change of address form; (4) Marrow's testimony that he had, in the past, filled out three different change of address forms was contradicted by the postmaster's testimony that the only form on file was submitted after the break-in and theft occurred; (5) Marrow's testimony about when he returned a spare van key to his father appeared to contradict his father's testimony; and (6) Marrow, at trial, testified to details of his actions on the day of the burglary and theft after not being able to remember details when he was initially questioned. The State argues that the jury could have reasonably inferred that Marrow lied about losing his keys prior to entry into Silver's shed and that the lie was an indication of consciousness of guilt. The State concludes that "the keys plus evidence of Defendant's consciousness of guilt prove beyond a reasonable doubt that Defendant committed burglary and theft." Brief of Appellee at 7.

■ In reviewing the sufficiency of the evidence, this court will consider only the evidence favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. We do not reweigh the evidence or judge the credibility of the witnesses. *Vega v. State,* 656 N.E.2d 497, 504 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* A conviction may be supported by circumstantial evidence, and this court does not have to find that the circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence "but only that

an inference may reasonably be drawn therefrom which supports the finding of the jury." *McAfee v. State,* 459 N.E.2d 1186, 1187 (Ind. 1984). However, circumstantial evidence will not be sufficient "if it merely tends to arouse suspicion of guilt ... [since] a person charged with a crime may only be convicted by proof beyond a reasonable doubt." *Nichols v. State,* 157 Ind.App. 605, 301 N.E.2d 246, 248–49 (1973).

Marrow characterizes the question of sufficiency of the evidence as an issue of due process under the United States Constitution. He emphasizes that due process "guarantees that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, defined as the evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Brief of Appellant at 9 (*citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A conviction is constitutionally infirm when no rational trier of fact could find guilt upon the evidence beyond a reasonable doubt. *Jackson,* 443 U.S. at 317–18, 99 S.Ct. 2781.

■ The State is incorrect in its argument that cases discussing fingerprints are applicable to the present case. Keys are personal property which can be possessed and left at a crime scene by someone other than the owner; on the other hand, fingerprints are peculiar to their owner and cannot be appropriated and left behind by another. The presence of the keys at the crime scene fails to establish beyond a reasonable doubt that Marrow had possession of the keys at the time of the burglary and theft and that he was the person who committed these acts. Furthermore, even if the keys were sufficient to establish presence at a crime scene, such presence, without more, is insufficient to establish guilt beyond a reasonable doubt. *See Cantrell v. State,* 673 N.E.2d 816, 819 (Ind. Ct.App.1996), *trans. denied.*

■ The State is also incorrect in its conclusion that evidence of certain apparent inconsistencies in Marrow's testimony was sufficient to establish a consciousness of guilt. Marrow named the exact location of the service station where he purportedly lost his

keys prior to the burglary and theft; his indecision about whether the station was a Marathon or a Shell station is not a sign of a guilty conscious but of a faulty memory. Marrow's "little bit of a tremble" is insufficient, by itself, to establish consciousness of guilt; a visible reaction is expected of a person who purportedly lost his keys at a service station, only to have them later found at a crime scene. *See Cantrell,* 673 N.E.2d at 818 (cautioning against ascribing too much probative value to actions which may have been prompted by motives consistent with innocence). Marrow testified that he did not attempt to obtain his mail from the post office box from the time he lost his keys in the service station until January 3, 1997, when he applied for a new key; his testimony about the past forwarding of mail and filling out three change of address forms was irrelevant to the time period pertinent to the burglary of Silver's shed and theft of Silver's tools. Marrow and his father both testified that his father gave him a spare van key in early December to replace the one he lost. Marrow's father testified that Marrow returned the key after Marrow wrecked the van in January of 1997. Marrow testified that he made a copy of the key and gave either the copy or the spare to his stepmother shortly after his father gave him the spare and gave the remaining key to his father after the van was wrecked. This testimony is not inconsistent and does not establish a consciousness of guilt. Finally, Marrow testified to some of the details of his actions on the day of the burglary and theft after being unable to recite details during his initial interview with the police on January 11, 1997. This testimony is not indicative of the manufacture of details because of a guilty conscience, but is more likely the reconstruction of the details of a previously mundane day after time for reflection.

The evidence presented by the State was sufficient to arouse suspicion that Marrow committed the acts of burglary of Silver's shed and theft of Silver's tools. It was not sufficient, however, to prove beyond a reasonable doubt that Marrow was the one that possessed and dropped the keys in the shed or that the keys were dropped at the time the burglary and theft occurred. Further-more, the evidence was insufficient to establish "consciousness of guilt."

## CONCLUSION

The evidence presented by the State was insufficient to establish that the burglary of Silver's shed and the theft of his tools was committed by Marrow. We reverse and remand to the trial court with instructions that the convictions be vacated.

Reversed and remanded.

BAILEY, and NAJAM, JJ., concur.