Corey Terrell PARKER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee Plaintiff.

No. 10A01–0010–CR–344.

Court of Appeals of Indiana.

Aug. 31, 2001.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Corey Terrell Parker appeals his conviction after a jury trial of robbery as a Class A felony.[1] Parker alleges the trial court committed error in its admission of his taped confession after a *Miranda* waiver executed by both himself and his mother. He further contends he was denied due process when the trial court enhanced his sentence pursuant to Ind.Code § 35–50–2–11 for the use of a handgun during the course of the robbery.

We affirm.

1.  Ind.Code § 35–42–5–1.

## FACTS AND PROCEDURAL HISTORY

On December 10, 1999, Parker was seventeen and a half years old and had possession of a .380 handgun. Parker handed the handgun to Jwan Crawford as the two discussed ways to get money. They decided, along with Darius Smith, to rob Uncle Miltie's Pawn Shop in Jeffersonville, Indiana. Loren Johnson, owner of Uncle Miltie's, was working on the computer on the counter near the entrance of the store when Crawford entered the store. Crawford told Johnson, "this is a hold-up," and he shot Johnson twice. Johnson then saw two other young men enter the store, begin taking money out of the drawer, and break the glass cases to retrieve merchandise. Johnson was able to dial 911.

Parker, Crawford, and Smith left, ran into an alley behind Uncle Miltie's, and then entered the home of a friend. When the friend's mother began screaming as the three ran in through her front door, they ran back into the alley as if nothing had happened. Sergeant Tim Deering of the Jeffersonville Police Department was four blocks away from the scene when he heard the radio report of the shooting. Sergeant Deering drove to the alley and noticed several people, including Parker, Smith and Crawford. When Sergeant Deering spoke with them, they said that they had been in the alley for an hour and had seen no one running through the area. Additional investigation revealed Parker, Smith and Crawford had just arrived in the alley and had not been there for an hour. After the three again told Sergeant Deering they had been in the alley for an hour, Sergeant Deering arrested them for false informing. Parker was held in a juvenile detention facility.

Later that evening, Parker's mother arrived at the police station and was immediately put into an interview room with Parker. Parker and his mother agreed that he should make a statement to police, and she and Parker signed a *Miranda* advisement and waiver of rights on December 11, 1999, at 1:05 a.m. The waiver explained that Parker had the right to remain silent, that anything he said could be used against him a court of law, that he could speak with counsel before and during questioning, that he had the right to appointment of an attorney at no expense, and that he had the right to stop the questioning at anytime. The waiver further explained that due to his juvenile status, he had the right to consult with a parent or guardian and have them present during questioning. (R. at 614.)

Two detectives discussed with Parker and his mother the events at Uncle Miltie's. Parker subsequently gave a taped statement implicating Crawford, Smith, and himself in the robbery. He was charged with attempted murder,[2] robbery,[3] residential entry,[4] false informing,[5] and two counts of use of a firearm in the commission of a violent felony.[6]

Prior to trial, Parker moved to suppress his statement to police. The motion was denied. Parker was convicted of the Class A felony robbery charge and was sentenced to forty years, with five years added to his sentence for the use of a handgun during the offense.

Parker now challenges his conviction, claiming his statement should have been suppressed because he was a juvenile and the statement was not knowingly or voluntarily made. He additionally claims he was denied due process because the trial court enhanced his sentence by five years upon finding he used a handgun in the course of the robbery. Parker specifically alleges the statutory sentence enhancement applied in his cause is unconstitutional.

## DISCUSSION AND DECISION

### 1. *Voluntariness of Statement*

We review a trial court's ruling as to the voluntariness of a waiver by looking to the totality of the circumstances, considering only the evidence favorable to the State and any uncontested evidence. *Carter v. State*, 686 N.E.2d 1254, 1257 (Ind.1997). Ind.Code § 31-32-5-4 provides that a review of the totality of the circumstances in juvenile cases is to include consideration of the child's physical, mental, and emotional maturity; whether the child or parent understood the consequences of the child's statements; whether the child and parent had been informed of the delinquent act; the length of time the child was held in custody before consulting with his parent; whether there was any coercion, force, or inducement; and whether the child and parent were advised of the child's right to remain silent and to the appointment of counsel. *Cherrone v. State*, 726 N.E.2d 251, 253-54 (Ind.2000).

Ind.Code § 31-32-5-1 sets forth the requirements for a valid waiver of state or federal constitutional rights in cases involving a juvenile. The statute provides in relevant part that these rights may be waived by the child's parent or guardian only if:

**2.** Ind.Code §§ 35-41-5-1, 35-42-1-1.

**3.** Ind.Code § 35-42-5-1.

**4.** Ind.Code § 35-43-2-1.5.

**5.** Ind.Code § 35-44-2-2.

**6.** Ind Code § 35-50-2-11(b).

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins in the waiver.

■ A hearing on the voluntariness of Parker's statement was held, and the trial court determined there was no cause to suppress the statement. The trial court based its decision on the totality of the circumstances, supported by Parker's own version of events. Parker testified that he had been held in a separate juvenile facility and that he slept while authorities contacted his mother in an effort to secure a *Miranda* waiver and statement from him. When Parker's mother arrived at the police station, Parker was awakened and brought for questioning. According to both Parker and detectives that testified at the suppression hearing, Parker and his mother were able to have a short, private meeting before talking to detectives. Detectives spent an additional 30 minutes with Parker and his mother discussing the investigation into the attempted murder and robbery at Uncle Miltie's before any statement was taken. Parker's own testimony at the suppression hearing reflects that he understood his rights. In addition, Parker has an extensive juvenile record, showing he has interacted with the justice system on numerous occasions. The trial court did not abuse its discretion in finding that Parker's statement was given voluntarily.

2. *Sentence Enhancement*

a. *Constitutionality of Enhancement Statute*

Parker challenges the constitutionality of Ind.Code § 35–50–2–11(b)(1), asserting the sentence enhancement based on his use of a handgun in the commission of the robbery denied him due process. We address only his federal argument, as Parker relies on recent United States Supreme Court authority on this issue and makes no independent argument under the Indiana Constitution.

Ind.Code § 35–50–2–11 provides:

(a) As used in this section, "firearm" has the meaning set forth in IC 35–47–1–5.

(b) As used in this section, "offense" means:

(1) a felony under IC 35–42 that resulted in death or serious bodily injury;

(2) kidnapping; or

(3) criminal confinement as a Class B felony.

(c) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally used a firearm in the commission of the offense.

(d) If after a sentencing hearing a court finds that a person who committed an offense used a firearm in the commission of the offense, the court may sentence the person to an additional fixed term of imprisonment of five (5) years.

■ Parker initially complains that the sentencing statute is unconstitutional as the "Due Process Clauses of the Fifth and Fourteenth Amendments and the jury protections of the Sixth Amendment require a factual determination authorizing an increase of the maximum sentence for an offense made by a jury on the basis of proof beyond a reasonable doubt." (Br. of Appellant at 12.) Parker correctly notes

that "other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum*[7] must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis supplied). *And see Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (2000) (such facts must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt).

The Court in *Jones* distinguished between facts that constitute elements of a crime, that facts must be charged and proven beyond a reasonable doubt, and mere "sentencing factors," which need not be charged or supported by a jury verdict. The Court discussed whether a carjacking statute, 18 U.S.C. § 2119, included three distinct offenses or rather defined a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of being charged and submitted to a jury. That statute provided that carjacking was punishable by a maximum of fifteen years' imprisonment if accomplished by force and violence or intimidation, by a maximum of twenty-five years if serious bodily injury results, and by life imprisonment if death results.

The *Jones* Court noted, "[I]t was at best questionable whether the specification of facts sufficient to increase a penalty range by two-thirds, let alone from 15 to life, was meant to carry none of the procedural safeguards that elements of an offense bring with them for a defendant's benefit." *Id.* at 233, 119 S.Ct. 1215. As a result, the Court determined that " § 2119 must be construed as establishing three separate offenses by the specification of distinct elements, each of which must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252, 119 S.Ct. 1215.

■ The application of the Indiana statute under which Parker's sentence was enhanced did not offend due process under the *Jones* and *Apprendi* standard. Parker appears to argue the application of the statute is unconstitutional because the trial court, and not the jury, determined Parker used a handgun. He is incorrect. We note initially that Parker's charging information explicitly stated that Parker committed the robbery "while armed with a handgun." (R. at 136.) The charging information was included in the jury instructions. The jury was given alternative theories upon which to convict Parker of the Class A felony: serious bodily injury to Loren Johnson, the use of or threat of use of force during the course of the robbery, or the use of a handgun itself. The jury's verdict did not reveal upon what theory it found Parker guilty of the Class A felony. However, all of these bases for the Class A felony conviction arose out of the use of a gun during the course of the robbery;[8] as such, the jury must have found beyond a reasonable doubt that a gun was used.

Parker is correct that under *Jones* and *Apprendi,* a fact that increases the penalty for a crime beyond the prescribed statuto-

---

**7.** A Class A felony has a sentencing range from a presumptive thirty years to a maximum of fifty years. *See* Ind.Code § 35–50–2–4. Parker received forty years with a five-year enhancement. The application of the enhancement for use of a handgun in Parker's case did not, as a result, increase the maximum penalty for his offense.

**8.** Counsel for Parker does not raise the issue as to whether the separate sentence enhancement determined by the trial court during sentencing presents a "double enhancement" issue. Accordingly, we do not address it.

ry maximum must normally be submitted to a jury and proved beyond a reasonable doubt. The charge that Parker used a handgun during the robbery was submitted to the jury, and to reach its verdict the jury must have determined beyond a reasonable doubt that the State proved he did.[9] The enhancement of Parker's sentence was therefore not error.

### b. *Use of a Handgun*

Parker argues that because Crawford was identified as the shooter, Parker's own sentence should not have been enhanced. The trial court found Parker's admission that he supplied the gun used in the robbery was the basis for the enhancement. A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense. Ind.Code § 35–41–2–4. We find Parker's admitted participation in the offense in the form of providing the handgun was sufficient to constitute the use of a firearm in the commission of the offense. The fact that Parker was not the actual shooter is irrelevant under this statute.

Affirmed.

SHARPNACK, C.J., and KIRSCH, J., concur.

---

9. We express no opinion as to whether, under *Jones* and *Apprendi*, the application of the handgun enhancement would violate due process if it were not so clear that the jury had found Parker used a handgun.