**Kristopher ABNEY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 25A05–0407–CR–394.

Court of Appeals of Indiana.

Feb. 15, 2005.

Transfer Denied April 7, 2005.

trial almost immediately.

T. Andrew Perkins, Peterson & Waggoner, LLP, Rochester, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Kristopher Abney (Abney), appeals his conviction for Count I, possessing material capable of causing bodily injury by inmate, a Class C felony, Ind.Code § 35–44–3–9.5.

We affirm.

### ISSUE

Abney raises four issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the State presented sufficient evidence to sustain Abney's conviction for possessing material capable of causing bodily injury by inmate; and

(2) Whether the trial court properly sentenced Abney in light of *Blakely v. Washington.*

### FACTS AND PROCEDURAL HISTORY

At approximately 2:30 a.m. on June 22, 2003, Jail Commander Jeff Berlasty (Commander Berlasty) of the Fulton County Jail, received a report that the inmates of cellblock # 3 refused to retire to their cells for the nightly lock-down. Cellblock # 3 consists of a common area, surrounded by four cells, with two cells upstairs and two cells downstairs. Although each cell only contains one bunk bed, on June 22, 2003, cellblock # 3 held seven inmates. Three inmates were required to sleep on a mattress on the floor of their respective cells. Abney was assigned to the lower right-hand cell of cellblock # 3.

Upon his arrival at cellblock # 3, Commander Berlasty performed a search of the cells. During this search, the inmates were removed and held in a separate area. While searching Abney's cell, Commander Berlasty recovered, besides Abney's personal effects, an item described as an altered binderclip. In addition, he found a small item partially inserted into a vent in the wall of Abney's cell. Commander Berlasty characterised this item as a shank, and described it as a hardened steel object with one end wrapped in a face cloth secured by a string and the other end sharpened to a point. The steel portion of this item originated from the altered binderclip found among Abney's personal effects. Following the search, Commander Berlasty confronted Abney with the discovery of the altered binderclip and shank. Although Abney admitted that he knew the

shank was in the vent, he denied possession of it, and instead claimed that another inmate had left it there.

On July 9, 2003 the State filed an information against Abney, charging him with Count I, possessing material capable of causing bodily injury by inmate, a Class C felony. On April 9, 2004, the State filed an amended information. On April 21 through April 22, 2004, a jury trial was held. At the close of the evidence, the jury returned a guilty verdict on Count I. On July 7, 2004, after a sentencing hearing, the trial court sentenced Abney to an executed sentence of seven years, to be served at the Department of Correction.

Abney now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

■ First, Abney contends that the State did not present sufficient evidence to sustain his conviction for possessing material capable of causing bodily injury by inmate. Specifically, Abney claims that the State failed to prove beyond a reasonable doubt that he constructively possessed the device since he did not have exclusive use of his cell.

■ Our standard of review with regard to sufficiency claims is well-settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Williams v. State*, 714 N.E.2d 671, 672–73 (Ind.Ct.App.1999). We only consider the evidence most favorable to the judgment and the reasonable inferences therefrom and will affirm if there is substantial evidence of probative value to support the conclusion of the trier-of-fact. *Id.* at 673. This court has held that a conviction for the crime charged may be based on circumstantial evidence. *Mar-*

*row v. State*, 699 N.E.2d 675, 677 (Ind.Ct. App.1998); *Duren v. State*, 720 N.E.2d 1198, 1201 (Ind.Ct.App.1999), *trans. denied.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Mabbitt v. State*, 703 N.E.2d 698, 700 (Ind.Ct.App.1998).

The offense of possessing material capable of causing bodily injury by inmate as a Class C felony is defined by I.C. § 35–44–3–9.5, in pertinent part, as: "[a] person who knowingly or intentionally while incarcerated in a penal facility possesses a device, . . . that: (1) is used; or (2) intended to be used; in a manner that is readily capable of causing bodily injury commits a Class C felony. Thus, in order to convict Abney, the State was required to prove that: (1) he knowingly possessed a device while incarcerated, and (2) that the device is intended to be used in a manner that is readily capable of causing bodily injury."

■ Here, the State prosecuted Abney under the theory of constructive possession after conceding that Abney's cell was not under his exclusive possession. It is well-established that constructive possession occurs when a defendant has both (i) the intent to maintain dominion and control over the device and (ii) the capability to maintain dominion and control over the item in question. *Gee v. State*, 810 N.E.2d 338, 340 (Ind.2004). The proof of a possessory interest in the premises on which the device is found is adequate to show the capability to maintain dominion and control. *See id.* at 341. In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. *See id.; Martin v. State*, 175 Ind.App. 503, 372 N.E.2d 1194, 1197 (1978) (a house or apartment used as a residence is controlled by the person who lives in it and that person may be found in control of

any drugs discovered therein, whether he is the owner, tenant, or merely an invitee.). This applies regardless whether the possession of the premises is exclusive. *Gee,* 810 N.E.2d at 341.

In the instant case, Commander Berlasty testified that although cellblock # 3 was overcrowded on June 22, 2003, Abney was the sole occupier of the lower right-hand cell. Even though the record supports that inmates were free to move between cells during the day, Abney's cell contained only his mattress and his personal possessions. Therefore, we conclude that Abney was in possession of his cell and thus capable of exercising dominion and control over all items discovered on these premises. *See id.*

■ However, the law takes a different view with regard to the intent prong of constructive possession. When a defendant's possession of the premises on which the device is found is not exclusive, then the inference of intent to maintain dominion and control over the device must be supported by additional circumstances pointing to the defendant's knowledge of the nature of the device and its presence. *See id.* These additional circumstances can be found through a variety of means: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) location of substances like drugs in settings that suggest manufacturing; (4) proximity of the contraband to the defendant; (5) location of the contraband within the defendant's plain view; and (6) the mingling of the contraband with other items owned by the defendant. *Id.*

In the case at bar, Commander Berlasty testified that the device was partially inserted into a vent in Abney's cell with the part secured by a cloth sticking out into the cell. He stated that even though the sharpened end of the device was inserted into the vent, the other end was visible

from the cell and did not take long to be discovered during the search. Commander Berlasty elaborated that the sharpened end of the device was constructed of hardened steel, originating from an altered binderclip. The record shows that this altered binderclip was found on the desk of Abney's cell, amongst his other personal possessions. Furthermore, in his statement to Sergeant Edward Beaird of the Fulton County Sheriff's Department, Abney admitted to knowing that the device was in his cell. As a result we conclude that Abney intended to maintain dominion and control over the device.

■ Next, Abney asserts that the State failed to prove beyond a reasonable doubt that the device was used or intended to be used in a manner readily capable of causing bodily injury. *See* I.C. § 35–44–3–9.5. We agree with Abney that the phrase "intended to be used" is part of the relative clause, modifying the antecedents "in a manner that is readily capable of causing bodily injury" and is not indicative of his level of culpability. *See Hevenor v. State,* 784 N.E.2d 937, 941 (Ind.Ct.App.2003). Rather, the culpability level for I.C. § 35–44–3–9.5 is clearly defined in the opening sentence as "a person who knowingly or intentionally . . . possesses."

During trial, Commander Berlasty described the device as a hardened piece of steel, sharpened to a point. He elaborated its usage as a defensive weapon, easily capable of causing bodily injury to guards, other inmates, and the public in general. Based on Commander Berlasty's testimony, we conclude that the jury could reasonably infer that the device was intended to be used in a manner readily capable of causing bodily injury. *See* I.C. § 35–44–3–9.5; see *Williams,* 714 N.E.2d at 672–73.

However, Abney now urges us to discard Commander Berlasty's testimony re-

garding the characterization of the device because of his limited time of employment in his current position. Nevertheless, Abney's assertion amounts to nothing more than an invitation to reweigh Commander Berlasty's testimony. We decline this invitation.

In light of the evidence before us, we conclude that the jury could reasonably find that Abney was an inmate, possessing material capable of causing bodily injury. The record clearly indicates that Abney had both the intent and capability to maintain dominion and control over the device and that the device was intended to be used in a manner capable of causing bodily injury. *See* I.C. § 35–44–3–9.5. Accordingly, we find that there is substantial evidence of probative value to support the conclusion of the jury. *See Williams*, 714 N.E.2d at 672. Consequently, we hold that the State presented sufficient evidence to support Abney's conviction.

## II. *Sentencing*

Next, Abney asserts that the trial court's imposition of an enhanced sentence violates *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied.* Specifically, Abney contends that the trial court erred by enhancing his sentence based on aggravators which were not supported by jury findings. Conversely, the State maintains that Indiana's sentencing scheme differs from the one struck down in *Blakely* and that it therefore does not run afoul of the Sixth Amendment. Alternatively, the State claims that, even if *Blakely* should apply, any error in this case is harmless beyond a reasonable doubt.

### A. *Blakely v. Washington*

■ The determination of the appropriate sentence rests within the discretion of the trial court and we will not reverse the trial court's determination absent a showing of manifest abuse. *Powell v. State*, 751

N.E.2d 311, 314 (Ind.Ct.App.2001). In *Blakely*, however, the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. *Blakely*, 124 S.Ct. at 2536. Specifically, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Supreme Court defined this statutory maximum as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 2537. (emphasis in original). "In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). Furthermore, we are convinced that the Supreme Court's recent opinion in *United States v. Booker*, 543 U.S. ——, ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (Stevens, J., writing for the Court) does not alter the *Blakely* rule as it applies in Indiana. As Justice Stevens espoused, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved by a jury beyond a reasonable doubt." *Id.*, at 756. This statement is reinforced by Justice Breyer writing that, "the Court holds that ... the Sixth Amendment requires juries, not judges to find facts relevant to sentencing." Id., at 756.

Accordingly, we concluded in *Krebs v. State*, 816 N.E.2d 469, 475 (Ind.Ct.App. 2004), that it appeared that our trial courts no longer have discretion to sentence a criminal defendant to more than the presumptive sentence unless the defendant waives his right to a jury at sentencing, a jury first determines the existence of aggravating factors, or the defendant has a criminal history.

### B. Indiana's Sentencing Scheme

As its main argument, the State maintains that *Blakely* does not apply to Indiana's sentencing scheme. In particular, the State alleges that *Blakely* does not require jury findings under Indiana's sentencing scheme because a presumptive sentence is merely a guidepost which enables the trial court to impose an appropriate sentence. We are not convinced.

 We recently held that because in Indiana the presence of a single aggravating circumstance may lead to an enhanced sentence, *i.e.*, one greater than the presumptive sentence, the presumptive sentence equates to *Blakely's* statutory maximum. *See Strong v. State*, 817 N.E.2d 256, 261 (Ind.Ct.App.2004); *Holden v. State*, 815 N.E.2d 1049, 1059 n. 6 (Ind.Ct. App.2004); *Berry v. State*, 819 N.E.2d 443, 456 (Ind.Ct.App.2004). Based on this newly, established caselaw, we reject the State's assertion that the presumptive sentence functions as a sentencing guidepost. Consistent with our prior decisions, we hold that *Blakely* prohibits our trial courts from imposing a sentence greater than the presumptive one based on a factor not admitted by the defendant or submitted to the jury and proven beyond a reasonable doubt.

### C. Use of Aggravating Circumstances

 In the instant case, the trial court sentenced Abney to an enhanced sentence of seven years for possessing material capable of causing bodily injury by inmate as a Class C felony. Indiana Code section 35–50–2–6 provides that "a person who commits a Class C felony shall be imprisoned for a fixed term of four years, with not more than four years added for aggravating circumstances or not more than two years subtracted for mitigating circumstances." Our review of the elaborate sentencing order reveals that the trial court enhanced Abney's sentence based on the following aggravators: (1) Abney's prior juvenile and adult criminal history that indicates a consistent inability to conform his conduct to the law and rules of society; (2) Abney's prior criminal history indicates a high risk of future criminal behavior; (3) the crime for which Abney was convicted was committed while incarcerated for another alleged crime and while on probation for a Class B felony burglary conviction; and (4) past probation and short jail term have not deterred Abney from violating the law, demonstrating an inability to abide by the law, to reform his behavior and a disdain for the trial court's sentencing authority. In balancing these aggravators, the trial court specifically addressed Abney's proffered mitigators but did not assign them any weight.

Abney now asserts error in the trial court's findings of the four aggravators. In particular, Abney alleges that (1) juvenile adjudications do not constitute prior convictions and thus must be supported by jury findings under *Blakely*; (2) several adult charges listed in the trial court's sentencing order resulted in dismissals, rather than convictions, and thus should be found by a jury; (3) the trial court's aggravator that, based on his criminal history, Abney has a high risk of committing future criminal behavior should be found by a jury; and (4) the trial court impermissibly used a material element of the offense to

enhance Abney's sentence. We will discuss each of these arguments in turn.

■ In this court's recent opinion of *Ryle v. State*, 819 N.E.2d 119 (Ind.Ct.App., 2004), we specifically held that juvenile adjudications are considered "prior convictions" under *Apprendi*, and thus can be properly identified by the trial court without any prior finding by the jury. However, our review of Abney's juvenile adjudications shows that only two charges of the total four charges resulted in formal adjudications. As a result, we conclude that only these two formal adjudications can be characterized as aggravators for the purpose of enhancing Abney's sentence.

■ With regard to Abney's adult criminal history, the record lists six separate offenses. The record reflects that two of these six offenses were dismissed. In light of *Blakely's* clear language that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt," the dismissed offenses cannot be used as aggravators without a specific finding by a jury. *See Blakely*, 124 S.Ct. at 2536. No such finding was made in the instant case; accordingly, we conclude that only four offenses can be properly used as the basis of the aggravating circumstance.

■ Further, we find that the trial court's generalized aggravators relating to Abney's possible future criminal conduct and inability to conform his behavior to the law and rules of society fall outside the scope of *Blakely*. The trial court clearly based its assessment of Abney's future behavior on Abney's current juvenile and adult criminal history. Even though we found that several offenses listed in his criminal history cannot be used as aggravators, nevertheless, his history remains impressive, and properly supported the trial court's generalized aggravator. As we have held before, where an enhanced sentence is based upon a defendant's prior history and aggravators derived of that history, the *Blakely* analysis is not implicated. *See Bledsoe v. State*, 815 N.E.2d 507, 508 (Ind.Ct.App.2004), *opinion on reh'g; Carson v. State*, 813 N.E.2d 1187, 1189 (Ind.Ct.App.2004).

■ Lastly, Abney argues that the trial court used a material element of the instant offense as an aggravator. In its sentencing order, the trial court listed as aggravator "the crime for which [Abney] was convicted was committed while incarcerated for another alleged crime and while on probation for a Class B felony burglary conviction." (Appellant's App. p. 24). Yet, Indiana Code section 35–44–3–9.5 requires, as an element of the crime of possessing material capable of causing bodily injury by inmate, that the person charged be incarcerated in a penal facility. Thus, we agree that the trial court's finding of Abney's incarceration is an improper aggravator since it is also a material element of the crime. *See Donnegan v. State*, 809 N.E.2d 966, 978 (Ind.Ct.App. 2004) (holding that a material element of an offense cannot be used to enhance a sentence). However, we find that the trial court's finding that Abney committed the instant offense while on probation for a burglary conviction is a proper aggravator because it is derivative of Abney's criminal history, and consequently, no *Blakely* analysis is triggered. *See Bledsoe*, 815 N.E.2d at 508.

■ Nonetheless, if one or more aggravating circumstances cited by the trial court are found invalid on appeal, we must next decide whether the remaining circumstance or circumstances are sufficient to support the sentence imposed. *See Patrick v. State*, 819 N.E.2d 840 (Ind.Ct.App.,

2004). As we explained in *Means v. State,* 807 N.E.2d 776, 778 (Ind.Ct.App.2004), *trans. denied*

> Even one valid aggravating circumstance is sufficient to support an enhancement of a sentence. When the sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. This occurs when the invalid aggravator played a relatively unimportant role in the trial court's decision. When a reviewing court "can identify sufficient aggravating circumstances to persuade it that the trial court would have entered the same sentence even absent the impermissible factor, it should affirm the trial court's decision." When a reviewing court "cannot say with confidence that the impermissible aggravators would have led to the same result, it should remand for re-sentencing by the trial court or correct the sentencing on appeal."

Here, the trial court identified four aggravators. While we invalidated some parts of these four aggravating circumstances under *Blakely,* we did not outright reject a single aggravating factor. As a result, Abney's enhanced sentence is based upon the following valid aggravators: (1) Abney's criminal history consisting of two juvenile adjudications and four adult convictions; (2) his high risk to exhibit future criminal behavior; (3) the instant offense was committed while on probation for burglary; and (4) Abney's inability to abide by the law. The trial court did not attach any weight to Abney's proffered mitigators. Given the importance of these four aggravating circumstances, combined with the non-existence of any mitigating factors, we refuse to hold that the trial court would have imposed a different sentence. *See id.* Therefore, we find that the trial court did not err by imposing an enhanced sentence.

Accordingly, we are not in a position to revise Abney's sentence on appeal.

## CONCLUSION

Based on the foregoing, we find that the State presented sufficient evidence to convict Abney of the offense of possessing material capable of causing bodily injury by inmate, and the trial court did not err when it sentenced Abney to seven years executed, three years beyond the presumptive sentence for that crime.

Affirmed.

CRONE, J., concurs.

ROBB, J., concurs in result with opinion.

ROBB, Judge, concurs in result with opinion.

I concur fully with respect to Part I of the majority opinion. However, I respectfully concur in result only with respect to Part II.

The State contends that Abney's Sixth Amendment rights have not been violated because *Blakely* does not implicate Indiana's sentencing scheme. The majority concludes that *Blakely* does implicate Indiana's sentencing scheme and "prohibits our trial courts from imposing a sentence greater than the presumptive one based on a factor not admitted by the defendant or submitted to the jury and proven beyond a reasonable doubt." Op. at 267. I, too, previously have rejected the State's argument and held that *Blakely* does implicate Indiana's sentencing scheme. *See Williams v. State,* 818 N.E.2d 970, 975 (Ind.Ct.App.2004); *Traylor v. State,* 817 N.E.2d 611, 622 (Ind.Ct.App.2004). However, I believe a recent United States Supreme Court opinion has shed further light on the *Apprendi/Blakely* issue and now believe that the issue of the

applicability of *Blakely* in Indiana merits reconsideration.

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In that case, the defendant entered a plea of guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. Under New Jersey state law, a second-degree offense carried a penalty range of five to ten years and a third-degree offense carried a penalty range of three to five years. As part of the plea agreement, the State reserved the right to request the court impose a higher enhanced sentence for one of the second-degree offenses on the ground that the offense was committed with a biased purpose pursuant to the state hate crime statute. The defendant reserved the right to challenge the enhancement. At the plea hearing, a factual basis for the three charged counts was established and the trial court confirmed that the defendant understood the possible maximum sentences for each count. The trial court accepted the guilty plea and the State then made a formal motion for an enhanced term. The trial court held an evidentiary hearing on the enhancement and concluded the evidence supported a finding by a preponderance of the evidence that the crime was motivated by racial bias and undertaken with a purpose to intimidate. The court accordingly found that the hate crime enhancement applied, and sentenced the defendant to a twelve-year term of imprisonment for the count at issue. The Supreme Court held that the

sentence was impermissible because it was greater than the ten-year maximum for the offense charged; despite the fact that New Jersey labeled the hate crime statute a sentencing factor, a finding that the defendant violated the statute exposed the defendant to a greater punishment than authorized by the jury's verdict and must therefore be proven beyond a reasonable doubt. *Id.* The Court also noted, however, that

> nothing in this history [of due process and the right to trial by jury] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. . . . [O]ur periodic recognition of judges' broad discretion in sentencing . . . has been regularly accompanied by the qualification that that discretion was bound by the range of sentencing options prescribed by the legislature.

*Id.* at 481, 120 S.Ct. 2348 (internal citations omitted).

Subsequently, in the first reported case in Indiana to consider application of the *Apprendi* holding,[1] this court held that the enhancement of a defendant's sentence pursuant to Indiana Code section 35–50–2–11 did not offend due process under the *Apprendi* standard. *Parker v. State,* 754 N.E.2d 614, 618–19 (Ind.Ct.App.2001). Section 35–50–2–11 provides, in relevant part:

> (c) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed an offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reason-

---

**1.** No case since *Parker* and prior to *Blakely* has squarely addressed the application of *Ap-*

*prendi* in any context other than a death penalty case.

able doubt that the person knowingly or intentionally used a firearm in the commission of the offense.

(d) If after a sentencing hearing a court finds that a person who committed an offense used a firearm in the commission of the offense, the court may sentence the person to an additional fixed term of imprisonment of five (5) years.

The defendant in *Parker* was charged with robbery as a Class A felony for an incident during which a man was shot twice. The charging information alleged that the defendant committed the robbery while armed with a handgun. The jury was given alternative theories upon which it could convict the defendant of the Class A felony: serious bodily injury to the victim, the use of or threat of use of force, or the use of a handgun. The jury found him guilty as charged, although the verdict did not reveal upon which theory it determined guilt. The trial court sentenced the defendant to forty years for the robbery conviction, enhanced by an additional five years pursuant to section 35–50–2–11. The defendant argued on appeal that the enhancement was unconstitutional. We held otherwise, noting that regardless of the theory upon which the jury found him guilty, the jury had to have determined beyond a reasonable doubt that a gun was used. *Id.* at 618. Moreover, in reference to the "prescribed statutory maximum" language from *Apprendi*, we noted that a Class A felony has a sentencing range from a presumptive thirty year sentence to a maximum sentence of fifty years and defendant was sentenced to forty years plus a five-year enhancement; therefore, application of the enhancement did not increase the maximum penalty for his offense. *Id.* at 618 n. 7. We have recently noted that this language from *Parker* impliedly held that the "prescribed statutory maximum" under our sentencing statutes referred to the maximum sentence in the statutory sentencing range that a defendant could receive for his offense. *Williams*, 818 N.E.2d at 976.

In 2004, the United States Supreme Court decided *Blakely*, and expanded upon *Apprendi* by further defining the "prescribed statutory maximum" as

the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537 (emphasis in original) (internal citations omitted). In *Blakely,* the defendant was initially charged with first-degree kidnapping in Washington. Pursuant to a plea agreement, the defendant pled guilty to second-degree kidnapping involving domestic violence and use of a firearm. Under Washington's sentencing statutes, the offense of second-degree kidnapping with a firearm carried a standard range of forty-nine to fifty-three months. However, the trial court could enhance a sentence above the standard range if it found certain aggravating factors, including that the defendant had acted with "deliberate cruelty." Finding that the defendant acted with deliberate cruelty, the trial court in *Blakely* sentenced the defendant to ninety months. The Supreme Court held that because the facts surrounding the defendant's exceptional sentence were neither admitted by him nor found by a jury, the sentence violated the defendant's Sixth Amendment right to trial by jury. *Id.* at 2538. The Court specifically noted that the federal Sentencing Guidelines were not at issue and expressed no opinion about the constitutionality of the federal Guidelines. *Id.* at 2538 n. 9.

*Blakely* caused great confusion among lower courts charged with imposing sentences in its wake. In Indiana, appellants almost immediately began raising the issue to attack their judicially-enhanced sentences and the State countered that *Blakely* was inapplicable in Indiana. Backing off the earlier *Parker* formulation of the "prescribed statutory maximum" as the maximum sentence in the statutory range, we determined that the maximum sentence a judge may impose in Indiana without additional findings is the presumptive sentence and therefore, *Blakely* does implicate our sentencing scheme. *See Traylor*, 817 N.E.2d at 622 ("Under Indiana law, after a jury returns a guilty verdict, the trial court can only impose the presumptive sentence, as outlined in the statute, without finding any additional facts. Therefore, the presumptive sentence for an offense is the prescribed statutory maximum for *Apprendi/Blakely* purposes."); *Strong*, 817 N.E.2d 256, 262 (Ind.Ct.App. 2004) ("[I]nasmuch as Indiana's present sentencing procedure allows a trial court, without the aid of a jury, to enhance a sentence where certain factors are present, it violates a defendant's Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence, pursuant to *Blakely*."). No appellate decision directly addressing the issue has yet decided otherwise.[2]

Earlier this year, the United States Supreme Court handed down another in the line of *Apprendi/Blakely* cases and addressed the question specifically left unanswered in *Blakely* regarding the constitutionality of the federal Guidelines. *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, 2005 WL 50108 (2005). *Booker* was actually two consolidated cases. In the first, Booker was charged with possession with intent to distribute at least fifty grams of crack. The jury heard evidence that he had 92.5 grams of crack in his duffel bag when arrested and found him guilty of the charge. Based upon Booker's criminal history and the quantity of drugs found by the jury, the federal Sentencing Guidelines required a base sentence between 210 and 262 months. At a sentencing hearing, the judge concluded by a preponderance of the evidence that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice. Based upon these findings, the Guidelines mandated a sentence between 360 months and life imprisonment. The judge sentenced Booker to 360 months. In the second case, Fanfan was charged with conspiracy to distribute and to possess with intent to distribute at least 500 grams of cocaine. The jury found that Fanfan had possessed 500 or more grams of cocaine with the intent to distribute. Under the Guidelines, the maximum sentence authorized by the jury finding was 78 months. Fanfan's sentencing hearing was held a few days after the Court's decision in *Blakely*. The trial court found additional facts by a preponderance of the evidence that, under the Guidelines, would have authorized a sentence of 188 to 235 months. However, based upon *Blakely*, the trial court declined to enhance the sentence based upon its additional findings and imposed a sentence that was based solely on the guilty verdict in the case.

The Court held that the Sixth Amendment is violated by imposition of an enhanced sentence under the Guidelines based upon the judge's determination of a fact that was not found by a jury or admit-

**2.** Our supreme court currently has several cases raising a *Blakely* issue under advise-

ment.

ted by the defendant. *Id.* 125 S.Ct. at 755. The Court expressly reaffirmed its holding in *Apprendi* that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* In so holding, however, the Court also echoed language from *Apprendi* concerning the constitutional difference between mandatory and discretionary sentencing schemes:

> If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. *See Apprendi*, 530 U.S. at 481, 120 S.Ct. 2348.... Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act] the provisions that make the Guidelines binding on district judges.... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Id.* 125 S.Ct. at 749 (some internal citations omitted). The remedy the Court fixed for the constitutional violation was to excise those provisions of the Guidelines which made them mandatory and binding upon trial judges. It is the language from *Booker* regarding trial court discretion in sentencing, coupled with the remedy the Court chose to render the Guidelines constitutional, that I believe requires we reconsider the effect of *Blakely* on our sentencing scheme. I believe it is no longer possible to read *Blakely* in isolation.

*Blakely* held that under any sentencing scheme, a trial court can exceed the prescribed statutory maximum and not implicate the Sixth Amendment if the defendant has a criminal history or admits additional facts supporting enhancement. What *Booker* adds to the discussion is that under a discretionary sentencing scheme, the Sixth Amendment is not implicated at all. It is true, as our earlier cases have stated, that in Indiana, the presumptive sentence is the only sentence the trial court can impose without making any additional findings. *See, e.g.,* Ind.Code § 35–50–2–6 ("A person who commits a Class C felony *shall* be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances."). However, the additional findings and the sentencing impact thereof are entirely within the trial court's discretion.

Although Indiana Code section 35–38–1–7.1 contains a list of seven factors which the trial court "shall" consider in determining what sentence to impose for a crime—in addition to a non-exhaustive list of aggravating and mitigating circumstances which the trial court "may" consider—no particular additional penalty is required to be imposed upon a finding of any one or more of those factors. In Indiana, *any* sentence above or below the presumptive is discretionary. The fact that a trial court judge is required to consider certain factors does not necessarily mean that a defendant's sentence will be enhanced. In fact, even a finding of criminal history or facts admitted by the defendant would not necessarily require enhancement. The judge may find a certain aggravating factor to exist, but assign minimal weight to the factor and decline to enhance the sen-

tence; the judge may determine that the aggravating factor is balanced by mitigating factors and decline to enhance the sentence; the judge may determine that the aggravating factor is outweighed by mitigating factors and reduce the sentence; or the judge may simply decline to find the factor at all.

*Booker* specifically states that discretionary sentencing schemes do not implicate the Sixth Amendment: *"when a trial judge exercises his discretion* to select a specific sentence within a defined range, *the defendant has no right to a jury determination* of the facts that the judge deems relevant." 125 S.Ct. at 749 (emphasis added). Because Indiana's sentencing scheme grants to trial court judges the discretion to impose a sentence within a prescribed statutory range, I now believe that Indiana's sentencing scheme passes constitutional muster as written. In essence, what remains of the federal Guidelines following *Booker* is substantially similar to Indiana's existing sentencing scheme. As the Court found the reshaped federal Guidelines to be constitutional, Indiana's is as well.

I would therefore not apply *Blakely* to Abney's sentence at all, but rather consider only the trial court's discretion in finding the aggravating circumstances and enhancing his sentence. Because I believe the trial court properly exercised its discretion in sentencing Abney, I concur in the majority's result affirming his sentence.